IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SOUTHWEST GUARANTY, LTD. | § | CASE NO. 10-32200-H3-11 |
| | § | |
| DEBTOR | § | (Chapter 11) |

| | | |
|---|---|---|
| Southwest Guaranty, Ltd. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | ADVERSARY NO. 10-_____ |
| | § | |
| Compass Bank | § | |
| Defendant | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT THAT THE PARLAMENT HOUSE NOTE IS PROPERTY OF THE ESTATE**

TO THE HONORABLE LETITIA Z. PAUL, UNITED STATES BANKRUPTCY JUDGE:

Southwest Guaranty, Ltd. ("Debtor") files this Original Complaint for Declaratory Judgment that the Parlament House Note is Property of the Estate ("Original Complaint") and would respectfully show the Court as follows:

JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334 because this is a proceeding arising in or related to a case under the Bankruptcy Code. Pursuant to Federal Rule of Bankruptcy Procedure 7008(a), the Plaintiff states that this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because the Chapter 11 case this proceeding relates to is pending in this district.

1

## PARTIES

3. Debtor, plaintiff Southwest Guaranty, Ltd., is a limited partnership organized under the laws of the State of Texas and whose address is 770 Post Oak Lane, Suite 650, Houston, Texas 77056.

4. Defendant, Compass Bank, is a foreign banking entity organized under the laws of the State of Alabama. Defendant may be served with process care of its registered agent for the State of Texas, CT Corporation, whose address is 350 N. St. Paul Street, Ste. 2900, Dallas, Texas 75201-4234.

## FACTUAL BACKGROUND

5. Since 2003, Debtor has been in the business of originating mortgage loans secured by first liens on commercial real property.

6. On or about July 10, 2003, a loan agreement was executed by Debtor, as borrower, and Texas State Bank (predecessor in interest to defendant Compass), as lender.

7. The loan agreement provided Debtor a $15,000,000 revolving line of credit. On the same date, and to secure Debtor's obligations under the revolver, the parties executed a corresponding revolving line of credit note, and a corresponding security agreement.

8. The security agreement, generally speaking, granted Texas State Bank a security interest in all of Debtor's accounts, inventory, fixtures, equipment, and general intangibles, as such terms are defined in the Uniform Commercial Code as adopted by the Texas Business & Commerce Code.

9. Parliament Partners, Inc. is an entity organized under the laws of the State of Florida, which owns and operates an Orlando, Florida, hotel called the Parliament House Resort.

10. On or about December 26, 2003, Debtor executed an agreement with Parliament Partners, Inc. to loan it $7,500,000.

11. On the same date, Parliament Partners, Inc. executed, in favor of Debtor (i) a $7,500,000 note payable to Debtor, and (ii) a "Mortgage, Deed of Trust, Security Agreement and Assignment of Leases."

12. The "Mortgage, Deed of Trust, Security Agreement and Assignment of Leases" granted Debtor a security interest in all the real and personal property owned by Parliament Partners, Inc., including in the Parliament House Resort, and the land on which it is situated.

13. To further secure its indebtedness to Debtor, on December 26, 2003, Parliament House, Inc. executed an "Assignment of Leases and Rents" in favor of Debtor. (Together with the Parliament Partners, Inc. loan documents described in paragraphs 10 through 12, hereinafter collectively referred to as the "Parliament Partners Loan").

14. The same day Debtor executed a "Security Agreement and Collateral Assignment" (hereinafter the "Security Agreement") in favor of Texas State Bank.

15. The Security Agreement refers to itself, internally, as the "Security Agreement."

16. The Security Agreement identifies Texas State Bank as the "Secured Party."

17. According to section 2 of the Security Agreement and as more specifically provided on page 4 of the loan agreement described above in paragraph 6 herein, "Obligations" means the obligations and liabilities of Debtor to Texas State Bank evidenced by the note described above in paragraph 7 an any and all other indebtedness, liabilities and obligations whatsoever of Debtor to Texas State Bank.

18. The purpose of the Security Agreement was to secure the prompt and full payment of Debtor's Obligations under the note and loan agreement described above in paragraphs 6 through 8.

19. Section 1 of the Security Agreement is subtitled "Grant of Security Agreement."

20. By way of section 1 of the Security Agreement, Debtor granted Texas State Bank a security interest in Debtor's ownership interest in the Parliament Partners Loan.

21. Section 4 of the Security Agreement provides that the "Security Agreement shall constitute a valid and binding security agreement under the Uniform Commercial Code-Secured Transactions (Article 9 of the Texas Business and Commerce Code) (hereinafter called the 'Code') . . . creating in favor of Secured Party [i.e., Texas State Bank], until the Obligations are fully paid, a first and prior security interest in and to the Collateral."

22. The Security Agreement is a "security agreement" as such is defined in Article 9 of the Texas Business and Commerce Code.

23. Section 1 of the Security Agreement defines "Collateral" as

   (a) All of Debtor's rights, titles and interests in and to that certain mortgage loan in the amount of $7,500,000.00, made by Parliament Partners, Inc. and transferred and assigned to Debtor, which loan is evidenced by the following:

   (i) Promissory Note dated December 24, 2003, in the original principal amount of $7,500,000.00, executed by Parliament Partners, Inc., payable to the order of Debtor, bearing interest and payable as therein provided, which note has been and is hereby endorsed over to Secured Party;

    (ii) Mortgage, Deed of Trust, Security Agreement and Assignment of Rents of even date with the Note to Russell Gaines, Trustee for the benefit of the Debtor, which covers the property described in Exhibit A to the Security Agreement;

    (iii) Assignment of Leases of even date with the Note, executed by Parliament Partners, Inc. in favor of Debtor;

    (iv) Guaranty Agreement of even date with the Note, executed by Donald Martin Granatstein and Gerald Cadesky in favor of Debtor.

  24. Section 4 of the Security Agreement further provides that 'Secured Party [i.e., Texas State Bank] shall have . . . all rights, remedies and recourses afforded to secured parties by the [Texas Uniform Commercial Code-Secured Transactions (Article 9 of the Texas Business and Commerce Code)] Code."

  25. Section 5(d) of the Security Agreement provides that in the event of a default by Debtor, Texas State Bank shall have the right to either sell the Parliament Partners Loan, or retain the Parliament Partners Loan "in satisfaction of the Obligations to the extent permitted by and in the manner provided in the [Texas Uniform Commercial Code-Secured Transactions (Article 9 of the Texas Business and Commerce Code)] Code."

  26. Section 5(h) of the Security Agreement provides that—in the event of a default by Debtor and in the further event that Texas State Bank is thereafter made whole by resort to its rights to the Parliament Partners Note under the Security Agreement -- after reimbursement to Texas State Bank of any costs of sale, and after satisfaction of Debtor's Obligations (as that term is defined in the Security Agreement), Debtor is entitled to any remaining funds from such sale of the Parliament Partners Loan (hereinafter referred to as "Retained Interest").

27. Section 8 of the Security Agreement obligates Texas State Bank to deliver a reassignment of the Collateral to Debtor upon full and complete payment and performance of all of Debtor's Obligations (as that term is defined in the Security Agreement) to Texas State Bank (hereinafter referred to as "Reassignment Interest.")

28. Defendant Compass Bank is the successor in interest to Texas State Bank.

29. Section 11 of the Security Agreement provides that Defendant Compass Bank, as successor in interest, is bound by the Security Agreement.

30. When Debtor executed the Security Agreement it did not intend the Security Agreement to cut off all of its property interests in the Parliament Partners Loan.

31. When Texas State Bank executed the Security Agreement it did not intend the Security Agreement—at the time of such execution --to cut off all of Debtor's property interests in the Parliament Partners Loan.

32. When Texas State Bank executed the Security Agreement it did not intend the Security Agreement—at the time of such execution – to cut off Debtor's Retained Interest.

33. When Texas State Bank executed the Security Agreement it did not intend the Security Agreement—at the time of such execution – to cut off Debtor's Reassignment Interest.

34. Debtor received no contemporaneous corresponding reduction of its indebtedness to Texas State Bank in exchange for its execution of the Security Agreement.

35. Debtor received no additional funding or credit from Texas State Bank, or any other person, in exchange for its execution of the Security Agreement.

36. After execution of the Security Agreement, until 2009, when Parliament Partners, Inc. ceased making payments to Debtor pursuant to the Parliament Partners Loan, Debtor

regularly received from Parliament Partners, Inc. monthly payments under the Parliament Partners Loan.

37. Upon receipt of such monthly payments from Parliament Partners, Inc., Debtor deposited the funds into its own bank account for its own use.

38. Texas State Bank was aware that Debtor was receiving and using the monthly payments, as described above in paragraphs 36 and 37, and never objected.

39. After Compass Bank became the successor in interest to Texas State Bank, Compass Bank was aware that Debtor was receiving and using the monthly payments, as described above in paragraphs 36 and 37, and did not object. In fact, Compass approved.

40. Debtor eventually defaulted under the terms of the Security Agreement.

41. In the event of default under the Security Agreement by Debtor, the Security Agreement empowers Compass Bank to conduct a foreclosure on the Parliament Partners Note.

42. Compass Bank has not conducted such a foreclosure.

43. Texas State Bank never conducted a foreclosure under the Security Agreement.

44. Neither Debtor nor Compass has sold the Parliament Partners Loan.

45. Debtor filed chapter 11 bankruptcy on March 17, 2010.

46. On March 17, 2010, Debtor still owned, at a minimum, its Retained Interest and Reassignment Interest in the Parliament Partners Loan.

47. On the day that Debtor filed its chapter 11 bankruptcy case, Debtor had a property interest in the Parliament Partners Loan.

48. Compass Bank, nonetheless, claims that it is the sole and exclusive owner of the Parliament Partners Loan.

49. Compass Bank claims that Debtor has no property interest in the Parliament Partners Loan.

50. Debtor has a property interest in the Parliament Partners Note.

51. Under Texas law, the "holder" of a promissory note can be a person other than the "owner" of a promissory note.

52. The Parliament Partners Note is property of the bankruptcy estate.

### CAUSES OF ACTION

### COUNT ONE: DECLARATORY JUDGMENT UNDER FEDERAL LAW

53. The foregoing paragraphs are re-alleged and incorporated herein.

54. Debtor brings this suit for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

55. Debtor seeks a declaration that the Parliament Partners Loan is property of the bankruptcy estate pursuant to 11 U.S.C. §541(a).

56. Declaratory relief is proper here because:

 (b) As set forth above, there is an actual controversy between Plaintiff and Defendant regarding whether the Parliament Partners Loan is property of the bankruptcy estate; and

 (c) In view of the pending bankruptcy case, the controversy is within the jurisdiction of this Court.

### COUNT TWO: DECLARATORY JUDGMENT UNDER TEXAS LAW

57. The foregoing paragraphs are re-alleged and incorporated herein.

58. Debtor brings this suit for declaratory judgment under Texas Civil Practice & Remedies Code Section 37.001 *et seq*.

59. Debtor seeks a declaration that the Parliament Partners Loan is property of the bankruptcy estate pursuant to 11 U.S.C. §541(a).

60. Declaratory relief is proper here because:

   (a) As set forth above, there is uncertainty as to whether the Parliament Partners Loan is property of the bankruptcy estate; and

   (b) In view of the pending bankruptcy case, the controversy is within the jurisdiction of this Court.

### COUNT THREE: ATTORNEY FEES

61. The foregoing paragraphs are re-alleged and incorporated herein.

62. Debtor seeks an award of the attorney fees and costs that it incurred to bring and prosecute this suit. Texas Civil Practice & Remedies Code Section 37.009 and 38.001.

### PRAYER

Debtor prays that Defendant Compass Bank be cited to answer this Original Complaint and that Plaintiff have a judgment against Defendant Compass Bank for the following:

a. declaring that the Parliament Partners Loan is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a); and

b. awarding Debtor attorney fees and costs incurred to bring and prosecute this action.

Respectfully submitted,

HOOVER SLOVACEK, L.P.

By:   */s/ Annie E. Catmull*
      EDWARD L. ROTHBERG
      State Bar No. 17313990
      MELISSA A. HASELDEN
      State Bar No. 00794778
      ANNIE E. CATMULL
      State Bar No. 00794932
      5847 San Felipe, Ste 2200
      Houston, Texas 77057
      Telephone: (713) 977-8686
      Facsimile: (713) 977-5395

ATTORNEYS FOR PLAINTIFFS